**ADDY, Appellee,**

v.

**ADDY, Appellant.**

[Cite as *Addy v. Addy* (1994), 97 Ohio App.3d 204.]

Court of Appeals of Ohio,
Franklin County.

No. 94APF03–421.

Decided Sept. 20, 1994.

*Vincent A. Dugan, Jr.,* for appellee Joyce Addy.

*Golden & Meizlish Co., L.P.A., Keith E. Golden* and *Jodie K. Meizlish,* for appellant John Addy.

BOWMAN, Judge.

Appellant, John Addy, and appellee, Joyce Addy, were married on August 10, 1964 and, during the course of the marriage, had three children, all of whom are emancipated. At the time she filed her complaint for divorce, appellee had been employed by K–Mart for ten years, where she earned a salary of $19,100 per year, or a net of $13,399.68. In addition to her compensation, appellee received medical benefits, a $12,000 life insurance policy, and a pension plan in which she is fully vested. Upon reaching the age of sixty-five, appellee will receive $145 per month in retirement benefits. The pension plan has a present cash value of $9,095.

For the past sixteen years, appellant has been employed by Clark Grave Vault Company, where he earns a salary of $52,008 per year, or a net of $35,885.20. He

also has medical benefits, a $50,000 life insurance policy, and a 401(k) plan, which has a present cash value of $30,424.22. In addition, appellant has an individual retirement account at The Ohio Company with a value of $25,523.29 and a $50,000 whole life insurance policy with State Farm Insurance Company with a present cash value of $4,455.71.

Both appellee and appellant graduated from high school; however, appellant has also received a vocational certificate as a machinist, has performed a tool and die apprenticeship and has taken an advanced course at Franklin University. Although neither party brought any property to the marriage, they own a home which they agreed to sell. Throughout the marriage, appellee received jewelry, clowns, teddy bears, cabbage patch dolls and music boxes as gifts from her family. Appellant received some jewelry as a gift from appellee, and he inherited a LeFever and an L.C. Smith field rifle from his father in 1975.

On October 12, 1993, the parties filed a stipulation which provided, in part:

"The parties further agree that the husband shall receive the 1986 Ford Ranger truck; the 1976 Pontiac Safari station wagon; the 1973 Volkswagen Thing; the 1981 Jeep; the 1982 Ford Escort; the 1967 Volkswagen Bug; the 1971 Ford Mustang; the 1971 Suzuki motorcycle; the 1974 Ducati motorcycle; the 19' Valient Fishing boat; the 17' Larson ski boat' [*sic* ] his guns and his tools as part of his property settlement herein.

"The parties further agree that the plaintiff shall receive the 1986 Mercury Cougar; her dolls, teddy bears, music boxes and her collectibles, and the household goods and furnishings as part of the property she receives herein. * * *"

A trial was held on the parties' amended complaint and amended counterclaim, following which the trial court rendered a judgment entry, including findings of fact and conclusions of law.[1] The court granted both parties a divorce based on their being guilty of gross neglect towards one another as a result of extramarital affairs.

The court awarded appellee spousal support in the amount of $1,000 per month until her death or remarriage, with the court retaining jurisdiction over this issue. The court also ordered that a restraining order issue against appellant's interests in The Ohio Company, Clark Grave Vault Company, and State Farm Life Insurance Company in order to secure his spousal support obligations. In addition, the court ordered that appellant maintain a $50,000 life insurance policy, with appellee as the beneficiary, to secure his spousal support obligations, so long

---

1. Because a transcript of the trial was not filed with this appeal, this court is limited to determining whether or not the trial court's findings of fact support the conclusions of law and the order issued.

as the obligation existed. Finally, the court divided the parties' property and assets.

Appellant now brings this appeal and asserts the following assignments of error:

"I. The Trial Court abused its discretion in making a permanent award of spousal support of $1,000 per month.

"II. The Trial Court abused its discretion in issuing a permanent Restraining Order to secure payment of spousal support, when the Court also Ordered Appellant to maintain a $50,000 life insurance policy to secure his spousal support obligations.

"III. The Trial Court abused its discretion in awarding all household goods and furnishings to Appellee."

In his first assignment of error, appellant asserts that the trial court abused its discretion in awarding appellee permanent spousal support in the amount of $1,000. Appellant asserts that appellee has opportunities to advance in her employment with K–Mart, if she were to resign from the union, and she could also charge her son, daughter and grandson, who are living with her, rent in order to assist her financially. Because of the choices appellee has made, appellant asserts that appellee limited her ability to "earn" more money and, thus, he should not be penalized by having to pay increased support based on the choices she has made.

Trial courts have broad discretion in formulating sustenance alimony awards and in dividing marital property. *Berish v. Berish* (1982), 69 Ohio St.2d 318, 23 O.O.3d 296, 432 N.E.2d 183. An appellate court should not alter an award absent a finding that the trial court abused its discretion, that is, a finding that the trial court's attitude is unreasonable, unconscionable or arbitrary. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. Nor may this court substitute its judgment on factual or discretionary issues for that of the trial court. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293.

Pursuant to R.C. 3105.18, a reasonable amount of spousal support should be awarded when appropriate. In making such a determination, a court should consider all of the factors listed in R.C. 3105.18(C). However, at the very least, equity requires that a party receive sufficient sustenance alimony to bring him or her to a reasonable standard of living, comparable to the standard maintained during the marriage. *Buckles v. Buckles* (1988), 46 Ohio App.3d 102, 546 N.E.2d 950.

In this case, we have a marriage of long duration where appellee, because of her age and lack of education, has not achieved a similar earning potential to that of appellant. As a result, appellee will probably never be fully self-supporting to the extent that she would have a similar standard of living to that established by the parties during the marriage. In addition, although this court is to consider the income of the parties from all sources, there is no requirement that appellee resign from the union or charge her son, daughter, and grandson rent in order to bring her standard of living to a similar level to that which existed when the parties were married. Because the trial court considered all of the statutory factors in determining its spousal support award, this court finds that the award is appropriate and reasonable, R.C. 3105.18(C), and, thus, we cannot say that the trial court abused its discretion.

In addition, appellant asserts that the spousal support which he is to pay should have a specific termination date. In support of this contention, appellant directs this court to *Picken v. Picken* (May 19, 1992), Franklin App. No. 91AP–1148, unreported, 1992 WL 113164, wherein this court found that it was an abuse of discretion for the trial court not to set a specific termination date for the spousal support award. However, in his concurring opinion in *Turner v. Turner* (1993), 90 Ohio App.3d 161, 168, 628 N.E.2d 110, 114, Judge Whiteside stated:

" * * * I write separately to emphasize that *Picken* should be limited to its specific facts and not applied as a rule of law. This court in *Picken* held that, under the peculiar facts of that case, the trial court should have limited spousal support to a specific time. Since *Picken* did not explain the specific factual basis for that conclusion, it has been contended that the same result must be reached with respect to every marriage of similar duration. However, under the *Kunkle* syllabus, a termination date for spousal support must be set only where the 'payee spouse has the resources, ability, and potential to be self-supporting.' In *Picken,* this court apparently found that to be the case. * * * "

This court declines to broaden the holding in *Picken* beyond the particular facts in that case and deems the first paragraph of the syllabus of *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, which holds the following, to be controlling:

"Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities."

In this case, there is a homemaker-spouse who has, in recent years, developed employment outside of the home. However, this employment, no matter how

much appellee advances with it, will not make her self-supporting, nor will it raise her standard of living to a level similar to that which existed when the parties were married. This case also involves a marriage of long duration, twenty-nine years, and parties of advanced age. Therefore, the criteria set forth in *Kunkle* have been met and the trial court did not abuse its discretion in not setting a termination date for the spousal support award. Appellant's first assignment of error is not well taken.

In his second assignment of error, appellant asserts that the trial court abused its discretion when it issued a temporary restraining order to secure the payment of his spousal support when it also ordered him to maintain a $50,000 life insurance policy to secure his spousal support obligations. The trial court's findings of fact indicate that appellant asserted at trial that, if the court awarded appellee spousal support in an amount in excess of $500 per month, he would quit his job and work as a gasoline attendant, as he has no intention of working as hard as he does to pay spousal support. Appellant also indicated that, if the court awarded spousal support in an amount in excess of what he deemed fair, he would liquidate his assets and move to Florida. Appellant maintains that requiring him to both maintain a life insurance policy with appellee as the beneficiary as well as prevent him from accessing his assets is inappropriate when one or the other of these avenues would sufficiently secure his spousal support obligation.

Civ.R. 75(H)(2) provides:

"When it is made to appear to the court by affidavit of a party sworn to absolutely that a party is about to dispose of or encumber property, or any part thereof of property, so as to defeat the other party in obtaining spousal or other support * * *, the court may allow a temporary restraining order, with or without bond, to prevent that action. * * *"

Civ.R. 75(H) is intended to protect the interests of the parties and preserve the authority of the court to make meaningful final orders for support. In this case, there was uncontroverted evidence that appellant did not want to pay appellee spousal support in excess of $500 per month and that, should the court order support above that amount, appellant would quit his job and/or move to Florida. As a result of these threats, the trial court acted within its discretion, using its equitable powers pursuant to R.C. 3105.011, and entered a restraining order against appellant's interests in The Ohio Company, Clark Grave Vault Company, and State Farm Life Insurance Company in order to secure his spousal support obligations. The evidence in this case substantiated the propriety of the court's action in issuing this restraining order and, to that extent, appellant's second assignment of error is not well taken.

However, this court finds that the trial court did abuse its discretion in ordering appellant to also maintain a life insurance policy with appellee as the beneficiary. In *McCoy v. McCoy* (1993), 91 Ohio App.3d 570, 632 N.E.2d 1358, the court found that security in the form of life insurance is inappropriate for spousal support payments. This is because spousal support terminates upon the death of either party under R.C. 3105.18(B), unless the order containing the award expressly provides to the contrary. In this case, the order for spousal support terminates upon appellee's death or remarriage and, thus, does not fall into the exception provided for in R.C. 3105.18(B). Requiring appellant to maintain a life insurance policy would not necessarily secure payment of appellant's spousal support obligation, as it would require appellant to keep current on the premiums and, in the event of an arrearage, would require appellee to survive appellant in order to collect.

This court finds that the insurance provision for spousal support is not appropriate in this case and, therefore, reverses that portion of the award as an abuse of the trial court's discretion. To that extent, appellant's second assignment of error is well taken.

In his third assignment of error, appellant asserts that the trial court erred in awarding all of the household goods and furnishings to appellee. Appellant asserts that this division of marital property is inequitable because appellee received all of the household property and furnishings whereas he received none.

In awarding the division of the marital assets, trial courts are vested with broad discretion in determining the scope of the award. *Berish.* In reviewing the equity of a division of property, one of the basic guidelines this court must follow is that the trial court's judgment cannot be disturbed absent a showing that the trial court abused its discretion in formulating its division of the marital assets and liabilities of the parties. *Martin v. Martin* (1985), 18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112. In addition, a reviewing court will not interfere in the decision of the court below unless the complaining party affirmatively shows an abuse of discretion by the trial court. *Zimmie v. Zimmie* (1984), 11 Ohio St.3d 94, 11 OBR 396, 464 N.E.2d 142.

In *Cherry,* the court stated that a potentially equal division of marital property should be the starting point of analysis for the trial court. In addition, the trial court has the authority and discretion to do what is equitable upon the facts and circumstances of each case, and "equitable" need not mean "equal." While this court must be vigilant in ensuring that the trial court's determination is fair, equitable, and in accordance with law, this court must refrain from the temptation of substituting its judgment for that of the trier of fact unless the lower court's decision amounts to an abuse of discretion. *Martin.*

■   In this case, this court cannot say that the trial court abused its discretion in dividing the marital property, especially in light of the stipulation filed by the parties, which provided that "[t]he parties * * * agree that the plaintiff shall receive * * * the household goods and furnishings as part of the property she receives herein."  The property division is equitable in light of the circumstances and, thus, appellant's third assignment of error is not well taken.

Based on the foregoing, appellant's first and third assignments of error are overruled, and appellant's second assignment of error is overruled in part and sustained in part.  The judgment of the trial court is reversed in part and this cause is remanded with instructions for the trial court to eliminate that part of its entry requiring appellant to maintain a life insurance policy with appellee as the beneficiary in order to secure the award of spousal support made to her.  Costs of this appeal are to be assessed against appellant.

*Judgment reversed and cause remanded with instructions.*

WHITESIDE, P.J., and DESHLER, J., concur.